Roberta **ARMBRUSTER**, Appellant,

v.

**MEMORIAL SOUTHWEST HOSPITAL, Dr. Carl Hamilton, and Dr. William Pfeiffer, Appellees.**

No. 01–92–00659–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 24, 1993.

Rehearing Denied July 22, 1993.

---

939

James R. Smith, Michael B. Charlton, Houston, for appellant.

Jay H. Henderson, Joseph B. Simmons, Jim Edwards, Houston, for appellees.

Before COHEN, O'CONNOR and PRICE[1], JJ.

## OPINION

COHEN, Justice.

This is an appeal from a summary judgment in a medical malpractice case for the defendants, Memorial Southwest Hospital (the Hospital), Dr. Carl Hamilton, and Dr. William Pfeiffer. We affirm the Hospital's summary judgment. Because the doctors' summary judgment evidence was concluso-ry, we reverse and remand the claims against them.

### Plaintiff's Allegations

Roberta Armbruster alleged that on September 19, 1988, she went to the Hospital for treatment of pain in her left foot. Dr. Hamilton examined her and referred her to Dr. Pfeiffer, a radiologist, for x-rays. Pfeiffer took x-rays of Armbruster's foot and diagnosed her injury as two broken toes. Pfeiffer specifically noted that other than the broken toes, he saw no other "definite abnormalities." Hamilton's diagnosis was consistent with Pfeiffer's, so he "buddytaped" the foot instead of casting it.

Armbruster alleged that both doctors misinterpreted the x-rays and negligently failed to diagnose a broken bone in her foot; that when another doctor reviewed the x-rays two months later, he claimed the x-rays clearly showed a fractured foot; and that the misdiagnosis by Pfeiffer and Hamilton forced her to later undergo corrective surgery. She also alleged Hamilton should have casted the foot. Because he did not, Armbruster alleged she required surgery to implant an artificial joint, and then developed an arthritic condition in her left foot. Finally, Armbruster alleged the Hospital was vicariously liable because it did not assure the care she received from the doctors was adequate.

### Standard of Review

The elements of a medical negligence claim are: (1) a duty to conform to a certain standard of care; (2) a failure to conform to the required standard; (3) actual injury; and (4) a reasonably close causal connection between the conduct and the injury. *Tilotta v. Goodall,* 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied). A defendant seeking summary judgment must prove conclusively that the plaintiff cannot prevail. *Griffin v. Rowden,* 654 S.W.2d 435, 435–36 (Tex. 1983). This may be accomplished by proving at least one element of the claim con-

---

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

clusively against the plaintiff. *Gray v. Bertrand,* 723 S.W.2d 957, 958 (Tex.1987) When the movant negates an element of the plaintiff's claim, the plaintiff must produce controverting evidence raising a fact issue on the element or elements negated. *Pinckley v. Gallegos,* 740 S.W.2d 529, 531 (Tex.App.—San Antonio 1987, writ denied). The plaintiff must prove by competent medical evidence either that the defendant did something other health care providers using ordinary care would not have done or that it failed to do something they would have done under the same circumstances. *Birchfield v. Texarkana Memorial Hosp.,* 747 S.W.2d 361, 366 (Tex.1987).

 In reviewing a summary judgment, we must take all evidence favorable to the nonmovant as true and grant every reasonable inference in favor of the nonmoving party. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). If differing inferences may reasonably be drawn from the summary judgment evidence, a summary judgment should not be granted. *Nixon,* 690 S.W.2d at 549. The movant's own evidence may establish the existence of a genuine issue of material fact on the plaintiff's claim. *Johnston v. Vilardi,* 817 S.W.2d 794, 796–97 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

### Summary Judgment for the Hospital

 The Hospital presented evidence it was not liable because 1) the doctors were independent contractors, not Hospital employees; 2) the doctors were not ostensible agents of the Hospital; and 3) the doctors were not negligent. The judge granted the Hospital a summary judgment in a general order. When the trial judge's order does not specify the grounds for the ruling, the summary judgment will be affirmed if any ground is meritorious. *Insurance Co. of North Am. v. Security Ins. Co.,* 790 S.W.2d 407, 410 (Tex.App.—Houston [1st Dist.] 1990, no writ). A party seeking to overturn a summary judgment that rests on several independent grounds must assign error to each ground or the summary judgment will stand on any omit-

ted ground. *Bailey v. Rogers,* 631 S.W.2d 784, 786 (Tex.App.—Austin 1982, no writ). Here, Armbruster has not assigned error to the Hospital's claim that 1) the doctors are independent contractors and not Hospital employees; or 2) the doctors are not ostensible agents of the Hospital. Thus, we affirm the summary judgment for the Hospital.

### Summary Judgments for the Doctors

 The threshold question in a medical malpractice case is the standard of care. It must be established so the fact finder can determine if the defendant deviated from it. *Tilotta,* 752 S.W.2d at 161–65; *Wheeler v. Aldama–Luebbert,* 707 S.W.2d 213, 216 (Tex.App.—Houston [1st Dist.] 1986, no writ). In medical negligence cases, the court must be guided solely by the expert opinion. *Id.* A summary judgment may be based on an expert's uncontroverted testimony if the testimony is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and capable of being readily controverted. *Republic Nat. Leasing Corp. v. Schindler,* 717 S.W.2d 606, 607 (Tex.1986); Tex.R.Civ.P. 166a(c). The affidavit of an interested expert who is also a party to the case can support summary judgment if it meets the requirements of rule 166a. *Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex.1991). An expert, however, cannot merely state he knows the standard of care and conclude that it was met. The expert must state what the standard is and say what was done to meet it. *Nicholson v. Naficy,* 747 S.W.2d 3, 4–5 (Tex.App.—Houston [1st Dist.] 1987, no writ). Affidavits that merely state conclusions rather than facts are insufficient. *Martin v. Petta,* 694 S.W.2d 233, 238 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.).

### Dr. Pfeiffer

Dr. Pfeiffer presented the following affidavit:

I did not at any time provide medical treatment to the patient, Roberta Armbruster. My sole contact with Ms. Armbruster's case consisted of interpreting

emergency room radiographs generated on September 19, 1988.

I reviewed several films, including radiographs of Ms. Armbruster's left ankle, foot and toes, left wrist, pelvis and right hip and right knee. I made the following findings with respect to Ms. Armbruster's left ankle, foot and toes: "There is an oblique fracture involving the base of the middle phalanx of the second toe medially. The fracture extends into the articular surface. There is a question of the non-displaced fracture involving the base of the proximal phalanx of the third toe. No other definite abnormality is seen."

Based on the qualifications described above, I am familiar with the standard of care with regard to radiograph interpretation in connection with the patient with injuries faced by the patient in question. That standard of care requires that the radiologist review the patient's radiographs and make an appropriate interpretation of said radiographs. In the instant case, I fully complied with or exceeded the requirements to meet the standard of care in a situation such as this one by taking all of the actions described above as outlined in the previous paragraphs of this affidavit.

In reviewing Ms. Armbruster's radiographs and in making my findings with regard to same, I acted in accordance with the highest standards of medical care applicable in Harris county and the State of Texas at the time in question.

I generally deny all of the allegations of negligence made against me by the plaintiff, including each and every allegation in the Plaintiff's Second Amended Original Petition.

Specifically, I deny that I caused injuries and damages by virtue of negligence. I deny that I failed to provide the equipment and/or skills and/or care as would have been provided had I provided Ms. Armbruster with the same level and quality of care that another physician, with similar training and background, would have provided her. I deny that my interpretation of the radiographs was not of the standard of care expected by other health care practitioners performing those duties. I deny that I negligently failed to diagnose the presence of a fractured bone in Ms. Armbruster's foot.

Drawing upon my experience, and expertise, and based upon a reasonable degree of medical probability, it is my opinion that no act or omission on my part caused any damage to the Plaintiff. Further, it is my opinion, based on the mentioned factors, that no act or omission on my part fell below the applicable standard of care as described above, in a case such as this. Finally, based upon the same factor, it is my opinion that no act or omission with respect to my medical care for the Plaintiff constituted medical malpractice.

 Armbruster asserts Pfeiffer's affidavit is insufficient on its face to sustain the summary judgment. We agree. Pfeiffer repeatedly states he was not negligent, but offers no facts or explanations to support those conclusions. Moreover, in the only place Pfeiffer discusses the facts of Armbruster's treatment, he asserts:

I reviewed several films, including radiographs of Ms. Armbruster's left ankle, foot and toes, left wrist, pelvis and right hip and right knee. I made the following findings with respect to Ms. Armbruster's left ankle, foot and toes: "There is an oblique fracture involving the base of the middle phalanx of the second toe medially. The fracture extends into the articular surface. There is a question of the non-displaced fracture involving the base of the proximal phalanx of the third toe. *No other definite abnormality is seen.*"

(Emphasis added.) While Pfeiffer states he saw only two broken toes and no other definite abnormality, Pfeiffer does not controvert Armbruster's allegation that he *should have* diagnosed the broken bone in her foot. Pfeiffer could have controverted that allegation by asserting, for example, that 1) Armbruster had no broken bone in her foot, or 2) her broken bone occurred after Pfeiffer's diagnosis, or 3) there was a broken bone in the foot, but a reasonably prudent physician would not have detected

it, and explained why not. Although one might infer such explanations from Pfeiffer's affidavit, the standard of review does not allow us to do so. Inferences must be made in favor of the nonmovant, not against her. *Nixon*, 690 S.W.2d at 548–49. In sum, the affidavit does not establish facts showing Pfeiffer was not negligent in his failure to diagnose the broken foot; it merely concludes that. As such, Pfeiffer's summary judgment proof is insufficient. *Nicholson*, 747 S.W.2d at 4–5.

### Dr. Hamilton

Dr. Hamilton presented the following affidavit:

My first and only contact with the Plaintiff, Roberta Armbruster, occurred on September 19, 1988 when she presented to the Memorial Southwest Hospital Emergency Room. At that time, her chief complaint was left foot pain secondary to a fall. She also had numerous other complaints, including right hip and knee pain and left wrist pain. A complete physical was performed and appropriate x-rays were obtained, resulting in my diagnosis of fractured left second and third toes.

Ms. Armbruster received the appropriate standard treatment for this injury: I "buddytaped" her toes, instructed her to wear firm support footwear to further buddytape her toes, to take Motrin, an analgesic, for pain, and to follow up with Dr. Stan Jones, an orthopedic surgeon, in one or two weeks for any problems, pain or swelling.

Based upon the qualifications described above, I am familiar with the standard of care and treatment of the patient with injuries and medical problems faced by the patient in question. That standard of care requires that the physician examine the patient, evaluate her medical condition, and treat the injury, prescribe medication if necessary, and refer the patient for follow-up treatment if necessary. In the instant case, I fully complied with or exceeded the requirements to meet the standard of medical care in a situation such as this one by taking all the actions described above as

outlined in the previous paragraph of this affidavit.

Throughout my contact with the patient, Roberta Armbruster, I acted in accordance with the highest standards of medical care applicable in Harris County and the State of Texas at the time in question.

I generally deny all the allegations of negligence made against me by the Plaintiff, including each and every allegation in the Plaintiff's First Amended Original Petition.

Specifically I deny that I caused injuries and damages by virtue of negligence. *I deny that I negligently failed to diagnose the presence of a fractured bone in the Plaintiff's foot. I deny that I negligently failed to cast the fracture involving the joint.*

Drawing upon my education, training, experience, and expertise, and based upon a reasonable degree of medical probability, it is my opinion that no act or omission on my part caused any damage to the Plaintiff. Further, it is my opinion, based on the mentioned factors, that no act or omission on my part fell below the applicable standards of care as described above, in a case such as this. Finally, based upon the same factors, it is my opinion that no act or omission with respect to my medical care for the Plaintiff constituted medical malpractice.

(Emphasis added.)

▮ Armbruster contends Hamilton's affidavit was insufficient because it did not explain why he failed to diagnose the broken foot, as opposed to broken toes, and why he did not cast Armbruster's foot. Again, we agree.

Hamilton's affidavit simply denies without explanation that he was negligent in failing to diagnose the broken bone in Armbruster's foot and in failing to cast the fracture. Like Pfeiffer, he does not say why a physician using reasonable care would have failed to diagnose the injury. Those conclusory assertions, like Pfeiffer's, are insufficient. *Nicholson*, 747 S.W.2d at 4–5.

Appellees assert Armbruster's summary judgment evidence, which included no expert testimony, does not establish a fact question. We need not address that contention. On appeal, we must first examine the movant's proof to determine whether, as a matter of law, it supports the summary judgment. The focus does not shift to the nonmovant's response unless the movant has established his right to judgment. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986); *Cove Invs., Inc. v. Manges*, 602 S.W.2d 512, 514 (Tex.1980); *Wheeler*, 707 S.W.2d at 215.

We sustain Armbruster's first point of error.

We reverse the judgments in favor of Drs. Pfeiffer and Hamilton, sever those causes, and remand them to the trial court. The judgment for the Hospital is affirmed.