Sandy JONES, Appellant,

v.

Dr. Bruce MILLER, Appellee.

No. 01–97–00213–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 9, 1998.

Rehearing Overruled May 13, 1998.

---

Sam M. Yates, Jr., Houston, Otto D. Hewitt, III, Alvin, for Appellant.

Deanna Dean Smith, Houston, for Appellee.

· Before SCHNEIDER, C.J., and HEDGES and NUCHIA, JJ.

## OPINION

NUCHIA, Justice.

Appellant Sandy Jones sued appellee Dr. Bruce Miller for malpractice and failure to obtain informed consent. The trial court rendered summary judgment against both claims. We reverse in part and affirm in part.

## BACKGROUND

On September 17, 1993, Jones went to the office of Dr. Miller, a podiatrist, because she was experiencing severe foot pain. After an examination, Dr. Miller informed Jones that she had a bunion and needed surgery. Dr. Miller scheduled the surgery for September 20, 1993. When Jones arrived at the hospital, the hospital had Jones sign an informed

consent form. The surgery went without incident, and Jones went home the same day.

Jones saw Dr. Miller for three post-operative follow up visits over the next month. During the last visit, on October 19, 1993, Dr. Miller diagnosed Jones's foot as "completely healed," and told her to begin wearing shoes and to walk on the foot. Jones followed Dr. Miller's directions; however, she experienced severe pain and returned to Dr. Miller's office the next day. After an examination, Dr. Miller told Jones that everything was normal and to continue walking on her foot.

For the next 3½ months, Jones continued to experience pain. Due to this pain, Jones decided to see Dr. Beegle, another podiatrist. Dr. Beegle determined that Jones had experienced bone "non-union" and that her foot was not completely healed. After Dr. Beegle's treatment of the bone non-union failed, he performed another surgery to help the bone heal.

Jones sued Dr. Miller for malpractice for his failure to diagnose the bone non-union. After Dr. Miller moved for summary judgment, Jones amended her complaint to add an informed consent cause of action. Dr. Miller filed an additional motion for summary judgment addressing the informed consent claim, to which Jones did not reply. The trial court granted both motions.

## DISCUSSION

Jones raises four points of error. Each point of error attacks whether Dr. Miller produced the quantum of evidence necessary to entitle him to summary judgment as a matter of law.[1] Jones points out in her brief, "The central issue in Ms. Jones'[s] appeal from the two adverse Summary Judgments is whether Dr. Miller 'proved beyond a reasonable doubt' that he was entitled to Judgment as a matter of law."

### Standard of Review

A party moving for summary judgment has the burden of proving there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548 (Tex.1985); Mayer v. State Farm Mut. Auto. Ins. Co., 870 S.W.2d 623, 624 (Tex.App.— Houston [1st Dist.] 1994, no writ). A defendant is entitled to summary judgment on the plaintiff's cause of action if the evidence disproves as a matter of law at least one element of the plaintiff's claim. Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex.1991); White v. Wah, 789 S.W.2d 312, 315–16 (Tex. App.—Houston [1st Dist.] 1990, no writ). In deciding whether there is a disputed material fact issue precluding summary judgment, we accept the evidence that favors the nonmovant as true, and indulge all reasonable inferences and resolve all doubts in favor of the nonmovant. Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex.1995). We will affirm the summary judgment if any of the theories advanced in the motion for that judgment is meritorious. Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 626 (Tex.1996).

### Medical Malpractice

The first motion for summary judgment addressed Jones's cause of action for medical malpractice. In a medical malpractice cause of action, the plaintiff must prove by competent testimony that the defendant's negligence proximately caused the plaintiff's injury. Duff v. Yelin, 751 S.W.2d 175, 176 (Tex.1988); Hart v. Van Zandt, 399 S.W.2d 791, 792 (Tex.1965). To do so, the plaintiff must prove four elements: (1) a duty by the physician to act according to a certain standard; (2) a breach of the applicable standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury. Wheeler v. Aldama–Luebbert, 707 S.W.2d 213, 217 (Tex.App.—Houston [1st

---

1. For example, in Jones's brief, she contends: (1) that the trial court in granting summary judgment because Dr. Miller did not carry his summary judgment burden; (2) that the trial court misapplied the appropriate summary judgment standard and misplaced the summary judgment burden upon her; (3) that there are genuine issues of material fact that bar summary judgment; and (4) that Dr. Miller's proof was defective and legally inadequate to entitle him to summary judgment.

Dist.] 1986, no writ). The threshold question in a medical malpractice case, however, is the standard of care. The applicable standard must be established so the fact finder can decide if defendant deviated from it. *Armbruster*, 857 S.W.2d at 941; *Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

■■■ When a defendant physician moves for summary judgment in a medical malpractice suit, he must offer testimony to support the judgment in the form of an affidavit or deposition by an expert. *White*, 789 S.W.2d at 315–16. He may properly rely upon his own affidavit in support of that motion, so long as the affidavit is clear, positive and direct, credible and free from contradictions and inconsistencies, and readily susceptible to controversion. Tex.R. Civ. P. 166a(c); *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991); *Armbruster v. Memorial Southwest Hospital*, 857 S.W.2d 938, 941 (Tex.App.—Houston [1st Dist.] 1993, no writ). It is not sufficient for an expert to simply state that he or she knows the standard of care and concludes it was met; rather, the expert must state what the standard is and explain how the defendant's acts met it. *Armbruster*, 857 S.W.2d at 941; *Nicholson v. Naficy*, 747 S.W.2d 3, 4–5 (Tex.App.—Houston [1st Dist.] 1987, no writ). The physician's expert testimony must also identify the relevant standard of care, establish that the expert is familiar with that standard, and specifically demonstrate that the medical care provided complied with the standard of care. *White*, 789 S.W.2d at 315–16.

Dr. Miller contends that his affidavit meets these criteria, properly setting forth the standard of care for podiatrists before, during, and after the operation. Dr. Miller's affidavit is rather specific when it describes the pre-operative and operation standard of care. The basis of this suit, however, is whether Dr. Miller failed to diagnose a lack of bone-union during the post-operative treatment of Jones. His entire description of the standard of care addressing this issue is that a podiatrist should "perform post operative x-rays of the left foot." He then conclusorily declares he met that standard of care by stating that he performed an x-ray and that Jones's foot was "healed."

This conclusory language does not give the trial court adequate knowledge of what a reasonably prudent podiatrist would do under the circumstances of this case. *See Armbruster*, 857 S.W.2d at 941 (holding evidence insufficient because it gave no explanation why a physician using reasonable care would have failed to diagnose the broken foot and cast the fracture); *Whittley v. Heston*, 954 S.W.2d 119, 122 (Tex.App.—San Antonio 1997, no pet.) (holding evidence insufficient because it did not address the complaints made by plaintiff and did not describe the examination and treatment with specificity); *Hall v. Tomball Nursing Center, Inc.*, 926 S.W.2d 617, 620 (Tex.App.—Houston [14th Dist.] 1996, no writ) (holding evidence insufficient because the doctor failed to provide enough specifics to allow a fact finder to ascertain whether he met the standard of care); *Chopra v. Hawryluk*, 892 S.W.2d 229, 233 (Tex.App.—El Paso 1995, writ denied) (holding evidence insufficient because it gave no explanation as to why a reasonably prudent radiologist would have interpreted mammogram negatively for cancer in light of malignancy discovered a year later).

Although Dr. Miller set out with specificity nearly every other facet of Jones's care, he did not set out the steps necessary to properly read the x-ray and determine that Jones's foot was "healed." The affidavit does not even explain the basis for Dr. Miller's diagnosis that Jones's foot was completely healed. Some explanation as to why a reasonably prudent podiatrist would have come to that conclusion is necessary to support summary judgment. *Chopra*, 892 S.W.2d at 233. "Without a recital of these basic details, there is insufficient information to allow a fact finder to determine what the standard of care is and whether Dr. [Miller] met the standard." *Whittley*, 954 S.W.2d at 122. We conclude that Dr. Miller's affidavit does not set out the applicable standard of care. *Chopra*, 892 S.W.2d at 233.

Dr. Miller's affidavit is insufficient to negate the elements of duty and breach because the affidavit did not meet the threshold requirement of establishing the standard of

care. *Chopra,* 892 S.W.2d at 233. The burden, therefore, never shifted to Jones to produce expert medical evidence. *Id.; see also Cedillo v. Jefferson,* 802 S.W.2d 866, 869 (Tex.App.—Houston [1st Dist.] 1991, writ denied) (burden does not shift to plaintiff to produce medical expert testimony until defendant disproves an element of plaintiff's case as a matter of law); *White,* 789 S.W.2d at 316 (same).

Moreover, although Dr. Miller's affidavit states that no act or omission on his part caused damage to Jones, this is a conclusory statement since we have no idea how Dr. Miller made his diagnosis. *Hall,* 926 S.W.2d at 620. In short, with regard to the specific post-operative treatment which is the basis of Jones's suit, the affidavit is "so conclusory and lacks so much factual detail that [Jones] would have had great difficulty controverting it had [s]he tried." *Id.*

Accordingly, the trial court erred in granting Dr. Miller's motion for summary judgment as to the malpractice claim. We sustain Jones's first point of error as it relates to the granting of the first summary judgment against her medical malpractice claim.

### Informed Consent

Jones also contends that the trial court erred in granting Dr. Miller's summary judgment as to her informed consent cause of action. Jones does not dispute that she signed an informed consent form provided to her by the hospital, nor does she contest the sufficiency of the form to advise her adequately concerning the risks and hazards associated with the surgery. Jones merely contends that Dr. Miller did not personally give the informed consent form to her; therefore, she argues that she did not give her informed consent to him.

This argument has already been disposed of by two other courts of appeals. *Eckmann v. Des Rosiers,* 940 S.W.2d 394, 398–99 (Tex. App.—Austin 1997, no writ); *Jones v. Papp,* 782 S.W.2d 236, 240–41 (Tex.App.—Houston [14th Dist.] 1989, writ denied). Nothing in the Medical Liability and Insurance Improvement Act makes its provisions dependent upon the physician's personally promulgating the disclosure form. *Eckmann,* 940 S.W.2d at 398–99.

Accordingly, it was not error for the trial court to grant Dr. Miller's motion for summary judgment on Jones's informed consent cause of action. We overrule all of Jones's points of error as they relate to the granting of Dr. Miller's motion for summary judgment against her informed consent cause of action.

### Conclusion

We reverse the trial court's granting of Dr. Miller's motion for summary judgment based upon Jones's malpractice cause of action, and affirm the granting of Dr. Miller's motion for summary judgment on the informed consent cause of action.