NUMBER 13-05-064-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


DONALD STREICH, Appellant,


v.
 


DR. JOSEPH DOUGHERTY, Appellee.

 


On appeal from the 197th District Court of Cameron County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Rodriguez and Castillo 


Memorandum Opinion by Chief Justice Valdez


 


 Appellant, Donald Streich, appeals from the trial court's order granting summary
judgment in favor of appellee, Joseph Dougherty, M.D., on a medical malpractice suit. (1) In
the sole issue presented, appellant claims the trial court erred in granting summary
judgment. We reverse and remand.

I. Background

 Appellant was diagnosed with congestive heart failure and end-stage renal disease. 
Appellant was admitted to Valley Baptist Medical Center and, on November 3, 1999, Dr.
Ruben Lopez inserted a Schon catheter into appellant's internal jugular vein for the
purposes of beginning dialysis. Appellant began dialysis under the care of Dr. Dougherty,
a nephrologist. Appellant was discharged from Valley Baptist on November 5, 1999.

 On November 6, 1999, appellant was again admitted to Valley Baptist complaining
of fever and chills. On November 8, 1999, a lab report showed that a blood culture taken
from the catheter site and drainage of the dialysis catheter was positive for staphylococcus
aureus. On November 12, 1999, Lopez removed the Schon catheter and inserted a left
Quinton catheter. On November 14, 1999, appellant told Dr. Dougherty that he was
experiencing low back pain. On November 16, 1999, Dr. Dougherty discharged appellant
with orders to continue outpatient dialysis. Appellant continued to experience back pain. 
 On November 29, 1999, Dr. Jerry Palleres performed a CT scan of appellant's
lumbar spine and concluded that appellant had an atypical compression fracture. On
January 8, 2000, Dr. Dougherty told appellant that he had a hairline crack in one of the
vertebrae of his tail bone and that his pain would improve gradually. Appellant continued
to experience back pain, and on February 5, 2000, Dr. Dougherty referred him to a pain
center and requested that nerve conduction studies be performed. 

 Appellant's back pain continued, and he developed pain in his hips and discomfort
and numbness in his legs. Appellant further developed weakness of the lower extremities
such that he could not walk. Appellant continued to keep his physicians informed
regarding his symptomology.

 Dr. Dougherty saw appellant on February 27, 2000, and on February 28, 2000, Dr.
Dougherty admitted appellant to Valley Baptist for observation. Dr. Dougherty referred
appellant to Dr. Gale Downey, a neurologist, for a consultation regarding appellant's leg
pain. On February 29, 2000, Downey performed an MRI of appellant's lower spine. The
MRI revealed an epidural mass. On March 1, 2000, Dr. Dougherty referred appellant to
Dr. Brent Clyde, a neurosurgeon, who found a lytic lesion at the L4 vertebrae. Clyde
recommended surgery. 

 On March 2, 2000, Dr. Eric Six, a neurosurgeon, performed surgery on the lesion
and discovered a large volume of pus, which had developed over time, primarily at the L3
and L4 vertebrae. Cultures taken on March 2, 2000 showed the presence of
staphylococcus aureus. Appellant was later informed that this infection was the result of
the earlier surgery to insert his catheter. (2)

 On February 27, 2002, appellant sent an article 4590(I) notice letter to Dr.
Dougherty and other medical providers informing them that a health care liability claim was
under consideration. According to the notice, the claim against Dr. Dougherty and others
was a result of negligence in the operative and post-operative care provided to appellant
for a surgery performed on November 3, 1999, resulting in infection and an epidural
abscess. Appellant subsequently filed suit on April 9, 2002. 

II. Motion for Summary Judgment

 Dr. Dougherty's motion for summary judgment was premised both on traditional
grounds and no evidence grounds. In his traditional motion, Dr. Dougherty moved for full
or partial summary judgment on grounds that the statute of limitations barred all of
appellant's causes of action or, in the alternative, barred any alleged negligence that
occurred prior to February 27, 2000. In his no evidence motion for summary judgment, Dr.
Dougherty argued that appellant had no evidence of duty, breach of duty, or proximate
causation. 

 The trial court's order granting summary judgment does not specify the basis for its
ruling. Because Dr. Dougherty moved for summary judgment on both traditional and no
evidence grounds and the trial court did not specify which it granted, we can uphold the
summary judgment on either ground. See Bruce v. K.K.B., Inc., 52 S.W.3d 250, 254 (Tex.
App.-Corpus Christi 2001, pet. denied); see also FNFS, Ltd. v. Sec. State Bank & Trust,
63 S.W.3d 546, 548 (Tex. App.-Austin 2001, pet. denied).

 When a party moves for summary judgment under both rules 166a(c) and 166a(i)
of the Texas Rules of Civil Procedure, we will first review the trial court's judgment under
the standards of rule 166a(i). Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex.
2004); see Tex. R. Civ. P. 166a(c), (i). If the appellant fails to produce more than a scintilla
of evidence under that burden, then there is no need to analyze whether appellee's
summary judgment proof satisfies the less stringent rule 166a(c) burden. Id.




III. No Evidence Motion for Summary Judgment

 A no evidence motion for summary judgment is essentially a pretrial motion for
directed verdict, and the appellate court will apply the same standard of review. Zapata
v. Children's Clinic, 997 S.W.2d 745, 747 (Tex. App.-Corpus Christi 1999, pet. denied);
Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex. App.-San Antonio 1998, pet. denied).
We "examine the entire record in the light most favorable to the nonmovant, indulging
every reasonable inference and resolving any doubts against the motion." City of Keller
v. Wilson, 168 S.W.3d 802, 823 (Tex. 2005); see Whalen v. Condo Consulting & Mgmt.
Servs., Inc., 13 S.W.3d 444, 446 (Tex. App.-Corpus Christi 2000, pet. denied). The
nonmovant need not "marshal its proof," rather, it "need only point out evidence that raises
a fact issue on the challenged elements." Tex. R. Civ. P. 166a(i) cmt. When a motion for
summary judgment is based on no evidence grounds, the Texas Supreme Court has
ordered that:

 1. the no-evidence motion can only be brought against "a claim or
defense on which an adverse party would have the burden of proof at
trial;"


 2. "the motion must state the elements as to which there is no
evidence;"


 3. "the motion must be specific in challenging the evidentiary support for
an element of a claim;" and


 4. "paragraph (i) does not authorize conclusory motions or general
no-evidence challenges to an opponent's case."

 

Tex. R. Civ. P. 166a(i), 166a(i) cmt.; see Oasis Oil Corp. v. Koch Ref. Co., 60 S.W.3d 248,
250 (Tex. App.-Corpus Christi 2001, pet. denied).

 "The trial court may not grant a no-evidence summary judgment if the respondent
brings forth more than a scintilla of probative evidence to raise a genuine issue of material
fact." Oasis Oil Corp., 60 S.W.3d at 250; Zapata, 997 S.W.2d at 747. Evidence that is "so
weak as to do no more than create a mere surmise or suspicion" of a fact is legally
insufficient and constitutes no evidence. Moore, 981 S.W.2d at 269 (quoting Kindred v.
Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)). More than a scintilla of evidence exists
when the evidence "rises to a level that would enable reasonable and fair-minded people
to differ in their conclusions." Merrell Dow Pharm., Inc., 953 S.W.2d at 711; Zapata, 997
S.W.2d at 747.

 In his no evidence motion for summary judgment, Dr. Dougherty alleged that
appellant had no evidence of duty, breach of duty, and proximate causation as required
in a medical negligence cause of action. According to Dr. Dougherty, the deadline for
appellant's designation of experts had passed and appellant had failed to designate
experts to testify that Dr. Dougherty's care and treatment of appellant after February 27,
2000 deviated from the standard of care. In response to the motion for summary
judgment, appellant produced the deposition testimony of his expert witness, Dr. Allen I.
Arieff.

 On appeal, Dr. Dougherty contends that appellant did not offer even a scintilla of
evidence that Dr. Dougherty was negligent in his treatment of appellant after February 27,
2000. According to Dr. Dougherty, appellant focuses only on the care rendered by Dr.
Dougherty between November 3, 1999, and February 24, 2000, all of which was barred by
the applicable statute of limitations. 

 The elements that must be proven for a medical malpractice action are: (1) a
physician's duty to act according to a certain standard; (2) a breach of the applicable
standard of care; (3) an injury; and (4) a causal connection between the breach of care and
the injury. Krishnan v. Ramirez, 42 S.W.3d 205, 212 (Tex. App.-Corpus Christi 2001, pet.
denied); Smith v. Mossbacker, 94 S.W.3d 292, 294 (Tex. App.-Corpus Christi 2002, no
pet.); Schorlemer v. Reyes, 974 S.W.2d 141, 147 (Tex. App.-San Antonio 1998, pet.
denied). 

 Duty in a medical malpractice case is triggered by the existence of a
physician-patient relationship. St. John v. Pope, 901 S.W.2d 420, 423 (Tex. 1995). A
physician-patient relationship comes into being only upon a physician's express or implied
consent. See id. Where no prior relationship exists, the doctor must take some affirmative
step to treat the patient before a relationship can be established. See Ortiz v. Shah, 905
S.W.2d 609, 611 (Tex. App.-Houston [14th Dist.] 1995, writ denied); Lopez v. Aziz, 852
S.W.2d 303, 306 (Tex. App.-San Antonio 1993, no writ). "The duty to treat the patient with
proper professional skill flows from the consensual relationship between the patient and
physician, and only when that relationship exists can there be a breach of a duty resulting
in medical malpractice." St. John, 901 S.W.2d at 423; see Ramirez v. Carreras, 10 S.W.3d
757, 761 (Tex. App.-Corpus Christi 2000, pet. denied). Once such a relationship exists,
however, the physician then owes the patient a duty to treat him or her with the skills of a
trained, competent professional, and a breach of that duty may give rise to a malpractice
action. Reynosa v. Huff, 21 S.W.3d 510, 513 (Tex. App.-San Antonio 2000, no pet.).

 The threshold question in a medical malpractice case is the standard of care. Jones
v. Miller, 966 S.W.2d 851, 854 (Tex. App.-Houston [1st Dist.] 1998, no pet.). The
applicable standard must be established so the fact finder can decide if the defendant
deviated from it. Id. To raise a fact issue sufficient to defeat summary judgment, the
plaintiff's controverting expert should specifically identify the standard of care, establish the
expert's familiarity with that standard, and explain why the treatment rendered by the
defendant health-care provider breached the applicable standard. Hightower v. Saxton,
54 S.W.3d 380, 389 (Tex. App.-Waco 2001, no pet.); Keeton v. Carrasco, 53 S.W.3d 13,
25 (Tex. App.-San Antonio 2001, pet. denied).

 In order to be a proximate cause, the negligence must have been a substantial
factor in bringing about the harm and without which, the harm would not have occurred. 
Columbia Med. Ctr. of Las Colinas v. Bush ex rel. Bush, 122 S.W.3d 835, 852 (Tex.
App.-Fort Worth 2003, pet. denied); Sisters of St. Joseph of Tex., Inc. v. Cheek, 61
S.W.3d 32, 35 (Tex. App.-Amarillo 2001, pet. denied). To establish proximate cause, a
plaintiff must prove both cause-in-fact and foreseeability. Duff v. Yelin, 751 S.W.2d 175,
176 (Tex. 1988). Cause-in-fact requires a causal connection between the injuries suffered
and the negligence of appellants based upon "reasonable medical probability," not mere
conjecture, speculation, or possibility. See Park Place Hosp. v. Estate of Milo, 909 S.W.2d
508, 511 (Tex. 1995). For an injury to be foreseeable, "a person of ordinary intelligence
should have anticipated the danger created by a negligent act or omission." Doe v. Boys
Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex. 1995). 

 In the instant case, the medical records and deposition testimony indicate clearly
that Dr. Dougherty and appellant had a physician-patient relationship and that Dr.
Dougherty provided appellant a course of treatment from November of 1999 through
August of 2000. Accordingly, Dr. Dougherty owed appellant a duty to treat him with the
skills of a trained, competent professional. Reynosa, 21 S.W.3d at 513. 

 Dr. Arieff testified regarding the applicable standard of care. His testimony
established his familiarity with that standard, and he explained why the treatment rendered
by Dr. Dougherty breached the applicable standard. Hightower, 54 S.W.3d at 389; Keeton,
53 S.W.3d at 25. In short, Areiff testified that Dr. Dougherty did not provide adequate post-surgical treatment of appellant's condition and that an adequate post-surgical course of
treatment would have remedied appellant's infection associated with the insertion of his
catheter. Dr. Areiff specifically detailed the symptomology that appellant suffered and the
protocols that could have identified the infection. Dr. Arieff further testified that Dr.
Dougherty's failure to properly treat and diagnose the infection resulted in appellant's
multiple surgeries and disability. 

 Although Dr. Dougherty contends that the record contains no evidence that he was
negligent in his care subsequent to February 27, 2000, or that any such negligence
proximately caused appellant's damages, our review of the record would indicate
otherwise. Specifically, appellant was under Dr. Dougherty's care on February 27, 2000,
February 28, 2000, February 29, 2000, and subsequently, without diagnosis of the infection
until March 2, 2000. 

 While Dr. Arieff offered evidence that a reasonably careful nephrologist would have
investigated appellant's progressive neurological disability by ordering neuroimaging
studies, requesting a gallium scan or an indium scan, or consulting a neurosurgeon or
neurologist, this evidence does not describe a failure on a specific date, but a failure that
occurred over the whole course of treatment. Specifically, Dr. Areiff's evidence does not
prove that Dr. Dougherty should have provided specific treatments on specific
ascertainable dates, but that Dr. Dougherty failed to provide specific treatments that should
have been provided at some point in the course of treatment, but not at every exam or at
any specific exam. No specific date for these failures can be ascertained from the
summary judgment evidence. Accordingly, we conclude that the trial court could not have
properly granted Dr. Dougherty's no evidence motion for summary judgment. 

IV. Traditional Motion for Summary Judgment

 We review the trial court's granting of a traditional motion for summary judgment de
novo. See Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); Alejandro v. Bell,
84 S.W.3d 383, 390 (Tex. App.-Corpus Christi 2002, no pet.). To prevail on a summary
judgment motion, a moving party must establish that no genuine issue of material fact
exists and judgment should be granted as a matter of law. Shah v. Moss, 67 S.W.3d 836,
842 (Tex. 2001). In deciding whether there is a genuine issue of material fact, we resolve
any doubt against the movant, and view the evidence in a light most favorable to the
nonmovant. Id.

 A defendant moving for summary judgment on the affirmative defense of a tolled
limitation statute has the burden of conclusively establishing that defense. KPMG Peat
Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999). A
defendant must (1) conclusively prove when the action accrued, and (2) negate the
discovery rule if it applies and has been pleaded or raised. Id. If the movant establishes
that the statute of limitations bars the action, the nonmovant must then offer proof raising
a fact issue to avoid summary judgment. Id.

 In this case, Dr. Dougherty moved for full or partial summary judgment on all of
appellant's causes of action or, in the alternative, for any alleged negligence that occurred
prior to February 27, 2000. In his motion for summary judgment, appellee contends that
appellant's causes of action are barred by limitations because the treatment complained
of occurred between November 3, 1999, and February 27, 2000, more than two years
before suit. According to appellee, all allegations of negligence which occurred prior to
February 27, 2000, were barred by the statute of limitations. Dr. Dougherty further
contends that appellant failed to present any summary judgment evidence that appellee
was negligent after February 27, 2000, or that such post February 27, 2000, negligence
proximately caused appellant's alleged damages. In a footnote in his appellate brief, Dr.
Dougherty concedes that the notice letter tolls the statute of limitations for seventy-five
days, so any post-February 27, 2000, negligence claims would be timely. 

 Because this case was originally filed before September 1, 2003, former article
4590i, section 10.01 of the Texas Revised Civil Statutes governs this case. Act of May 30,
1977, 65th Leg., R.S., ch. 817, § 1.01-12.01, 1977 Tex. Gen. Laws 2039-2053 (as
amended) (henceforth "Former Tex. Rev. Civ. Stat. art. 4590i"), repealed by Act of June
2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version
at Tex. Civ. Prac. & Rem. Code Ann. § 74.001 et seq. (Vernon Supp. 2004-05)). Former
article 4590i, section 10.01, in pertinent part, provides: 

 Notwithstanding any other law, no health care liability claim may be
commenced unless the action is filed within two years from the occurrence
of the breach or tort or from the date the medical or health care treatment
that is the subject of the claim or the hospitalization for which the claim is
made is completed . . . .


Former Tex. Rev. Civ. Stat. art. 4590i, § 10.01. 

 The former statute created a two-year limitations period in which to bring suit on
health care liability claims. See id.; Kimball v. Brothers, 741 S.W.2d 370, 372 (Tex. 1987). 
Under the statute, commencement of limitations begins on one of three dates: (1) the
occurrence of the breach or tort; (2) the date the medical or health care treatment that is
the subject of the claim is completed; or (3) the date the hospitalization for which the claim
is made is completed. See former Tex. Rev. Civ. Stat. Ann. art. 4590i, § 10.01; Shah v.
Moss, 67 S.W.3d 836, 841 (Tex. 2001); Kimball, 741 S.W.2d at 372. A plaintiff may not
simply choose the most favorable date that falls within this provision, but rather, if the
specific date of the alleged tort is ascertainable, the limitations period commences upon
that date. Shah, 67 S.W.3d at 841; Earle v. Ratliff, 998 S.W.2d 882, 886 (Tex. 1999). In
other words, if the date of the occurrence of the breach or tort is ascertainable, then an
inquiry into the second and third categories is unnecessary. Shah, 67 S.W.3d at 841. If
the date is not ascertainable, the plaintiff must establish a course of treatment for the
alleged injury in which the last treatment date becomes relevant to determining when
limitations begins. Id. In such a case, the commencement of the limitation period occurs
on the last date appellee treated appellant and had a chance to perform his alleged duties. 
See Shah, 67 S.W.3d at 843. However, if the date of the alleged tort is ascertainable,
limitations begin to run on that date whether or not the plaintiff established a course of
treatment. Id. at 841. 

 By virtue of section 4.01 of the former act, a person could extend the two-year
limitations period for seventy-five days by giving notice of a claim under the Act. 
See Former Tex. Rev. Civ. Stat. Ann. art. 4590i, § 4.01; De Checa v. Diagnostic Ctr.
Hospital, Inc., 852 S.W.2d 935, 937-38 (Tex. 1993) (notice given in accordance with
section 4.01(a) tolls the applicable statute of limitations for seventy-five days, effectively
creating a two-year-and-seventy-five-day statute of limitations); Theroux v. Vick, 163
S.W.3d 111, 114-15 (Tex. App.-San Antonio 2005, pet. denied). Generally, a suit may not
be filed outside this extended limitations period. De Checa, 852 S.W.2d at 938. Moreover,
notice under former section 4.01 could not toll a limitations period that had already
elapsed. Id. at 938 n.4. 

 According to Dr. Dougherty's brief:

 Appellee firmly and conclusively established that, since Appellant's notice
letter was sent on February 27, 2002 and no suit was filed prior to February
27, 2002, all alleged negligence occurring on or before February 27, 2000 is
absolutely barred by the two year statute of limitations pursuant to § 10.01
of the Texas Medical Liability and Insurance Improvement Act.


Dr. Dougherty appears to be contending that the date that appellant sent his notice letter
has some impact on the accrual of appellant's cause of action. We do not agree. The
notice letter does not establish the accrual date of the cause of action for limitations
purposes; rather, its purpose is to toll limitations once the cause of action has accrued. 
Likewise, suits based on the conclusion of a course of medical or health care treatment are
based on the course of treatment and not the completion of treatment. As stated
previously, limitations begin to run on: (1) the occurrence of the breach or tort; (2) the date
the medical or health care treatment that is the subject of the claim is completed; or (3) the
date the hospitalization for which the claim is made is completed. See Former Tex. Rev.
Civ. Stat. Ann. art. 4590i, § 10.01; Shah, 67 S.W.3d at 841.

 According to the summary judgment evidence, appellant was examined by Dr.
Dougherty over the course of multiple occasions spanning from November of 1999 until
the infection was finally diagnosed on March 2, 2000. Appellee's alleged negligent failure
to diagnose and treat the infection allegedly occurred over the span of those dates. While
individual dates of examination and treatment are readily ascertainable, as they are in all
course of treatment cases, the failure occurred over the whole course of treatment and no
single date for the failure can be ascertained. 

 Viewing the evidence in the light most favorable to appellant, there is an issue of
fact about whether Dr. Dougherty committed the alleged tort as part of an on-going course
of treatment that extended through February 27, 28, 29, and March 1, by failing to
recognize and treat appellant's infection that was secondary to his prior surgery. Gilbert
v. Bartel, 144 S.W.3d 136, 142 (Tex. App.-Fort Worth 2004, pet. denied); see, e.g., Husain
v. Khatib, 964 S.W.2d 918, 919 (Tex. 1998) (affirming summary judgment in favor of
physician whose failure to diagnose plaintiff's cancer occurred on readily ascertainable
dates, even though course of treatment by same physician eventually led to correct
diagnosis). We would note that some of the medical records identify Dr. Dougherty as a
referring physician on March 1, 2000, and March 2, 2000. We would also note that Dr.
Dougherty's reply to appellant's response to the motion for summary judgment concedes
that Dr. Dougherty provided additional medical care to appellant from February 28, 2000
to August 2000. We conclude that limitations on the course of treatment had not yet run
on February 27, 2002, when appellant sent his notice letter. Accordingly, appellant had
an effective limitations period of two years and seventy-five days. Suit was brought well
within that time on April 9, 2002.

 Dr. Dougherty failed to carry his burden to conclusively establish that limitations
barred appellant's suit. KPMG Peat Marwick., 988 S.W.2d at 748. Suit was brought
within the applicable limitations period. Accordingly, the trial court could not have
appropriately granted summary judgment on this ground.

V. Conclusion

 We reverse and remand this matter to the trial court for further proceedings
consistent with this opinion.

 _______________________

 ROGELIO VALDEZ

 Chief Justice


Dissenting Memorandum Opinion by Justice Castillo.

Memorandum Opinion delivered and filed 

this the 24th day of August, 2006.

 





1. Other aspects of this case have previously been addressed by this Court in Streich v. Pallares, No.
13-02-698-CV, 2005 Tex. App. LEXIS 5224 (Tex. App.-Corpus Christi 2005, no pet.), and Streich v. Lopez,
No. 13-02-074-CV, 2004 Tex. App. LEXIS 7703 (Tex. App.-Corpus Christi Aug. 26, 2004, no pet.). 
2. Appellant's claims against Dr. Dougherty do not involve allegations regarding the surgery or the
causation of the infection. Instead, appellant's claims against Dr. Dougherty involve his post-surgical course
of treatment.